IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DANIEL CURTIS BALLINGER,**

        **Petitioner,**

v.                                                      **Civil Action No.: 5:17cv158**

**JENNIFER SAAD, Warden**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On October 18, 2017, Petitioner Daniel Ballinger ("Petitioner" or "Defendant"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. On October 19, 2017, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 6. On October 27, 2017, Respondent filed a response to the Petition by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 10. On October 30, 2017, the Court entered a Roseboro Notice, informing Petitioner of his right and obligation to respond to the Government's Motion. ECF No. 12. On November 13, 2017, Petitioner filed his Response. ECF No. 14. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

### II.   BACKGROUND

**A.   Conviction and Sentence**

When he initiated this matter, Petitioner was incarcerated at the federal correctional institution in Glenville, West Virginia ("FCI Gilmer"). ECF No. 11-1 at 1. He has since been transferred to the federal correctional institution in Memphis, Tennessee. ECF No. 15. He is serving a 151-month sentence imposed by the United States District Court for the Eastern District of Tennessee on August 11, 2011, for Possession with Intent to Distribute Fifty Grams or More of Cocaine Base. ECF No. 11-1 at 1. His projected release date, with consideration for good conduct time, is January 10, 2021. Id.

**B.     Prison Disciplinary Proceeding**

On October 22, 2016, a staff member at FCI Gilmer drafted an incident report regarding Petitioner, an inmate of that institution. The staff member reported that:

> At approximately 10:25 AM on Saturday, October 22, 2016 as I was conducting a random cells search for contraband in cell 127 and housing unit C-1, I recovered a homemade weapon approximately 6 ½ inches in length, with a blue-and-white handle taped on one end and a piece of metal that was sharpened to a point attached to the other end. The item was taped underneath the locker directly beside of the bunks inside of the cell. Items within the locker are identifiable to inmate Ballenger, Curtis 21489 – 074. Possession of this item is in direct violation of prohibited act code 108.

ECF No. 11-1 at 4.

That same day, a copy of the incident report was provided to Petitioner at 4:35 PM. Id. The Unit Discipline Committee ("UDC") assigned a BOP Lieutenant to investigate the charges. ECF No. 11-1 at 5. During the investigation, the BOP's Lieutenant interviewed Petitioner after informing him that he had the right to remain silent. Id. Petitioner stated, "They need to rewind the cameras and see who planted that in our cell." Id. The investigation was completed at 5:00 PM on October 22, 2016, and the Lieutenant concluded that based on the information in block 11 of the incident report, the report was true and correct as written and warranted. Following the investigation, the UDC forwarded the Incident Report to the Disciplinary Hearing Officer ("DHO") and recommended that, if

Petitioner was found guilty of the charges, the DHO discipline him with, among other things, loss of good conduct time. ECF No. 11-1 at 4.

On October 25, 2016, FCI Gilmer staff notified Petitioner that a DHO would conduct a hearing to address the allegations against him. ECF No. 11-1 at 7. In addition, staff notified Petitioner of his rights as an inmate facing discipline. ECF No. 11-1 at 9.

On December 6, 2016, a DHO conducted a disciplinary hearing to address the allegations against Petitioner. ECF No. 11-1 at 11. The DHO again advised Petitioner of his rights as an inmate facing discipline. Id.  Petitioner confirmed that he understood his rights and decided to proceed without his previously requested staff representative and declined to call a witness. Id. When the DHO asked Petitioner about the weapon, he responded: "No, it wasn't my weapon. Someone must have put it there." Id. at 11. After considering the incident report and Petitioner's statement, the DHO concluded that Petitioner had possessed a weapon. Id. More specifically, the DHO concluded that Petitioner had possessed a dangerous weapon, which is a BOP prohibited act classified as a "Code 104." Id. at 12; See also 28 CFR 541.3. The DHO noted that neither Petitioner nor his cellmate admitted to possessing the weapon. Id. Furthermore, the DHO noted that Petitioner is ultimately responsible for everything inside of his cell, including concealed contraband. Id. The DHO sanctioned Petitioner with 40 days loss of good conduct time, 14 days disciplinary segregation (suspended pending 100 days clear conduct); 90 days loss of commissary; and 90 days loss of phone. The report also included the reason for Petitioner's sanctions. Id. To illustrate, the report provided that:

> The action/behavior on the part of any inmate to possess, manufacture, or introduce any type of weapon, or weapon making materials, firearm, or knife capable of inflicting serious injury to another person, whether another inmate or staff member, threatens the health, safety, and welfare of not only the inmate involved, but all other inmates and staff alike. In the past this action has been shown to result in more serious injuries and cannot be tolerated.

Id. at 13. A written report summarizing the disciplinary hearing, including the reasons for the imposed sanctions, was delivered to Petitioner on January 16, 2017. Id.

### III.     CONTENTIONS OF THE PARTIES

Petitioner alleges that he was denied his due process rights in violation of 28 CFR 541. More specifically, Petitioner alleges that the DHO "constructively" amended the incident report by finding him guilty of violated prohibited act code104 as opposed to code 108 as charged in the incident report. In addition, Petitioner maintains that the constructive possession rule does not apply to this case because his cell was accessible not only to himself and his cellmate but also to any of the 130 inmates that lived in that unit because the inmate cells remain unlocked during the day except during preset head counts. Petitioner maintains that the contraband found underneath the locker in his cell was in an area that can be accessible to any other inmate. Therefore, Petitioner argues that any inmate could easily have planted the weapon in his cell as it would not have taken even 5 seconds to go inside the cell and tape the weapon underneath the locker. For relief, Petitioner requests that this Court vacate and expunge the prison disciplinary conviction for possession of a weapon and restore the good time credits lost as a result of the conviction.

In his response to the Petition, Respondent argues that Petitioner received the due process rights required by Wolff v. McDonnell, 418 U.S. 539 (1974). In addition, respondent argues that federal regulations expressly authorize a DHO to determine that an inmate committed the precise prohibited act charged in the incident report and/or a similar prohibited act as described in the instant report. Respondent also argues that a federal inmate has no fundamental constitutional right to be free from false prison disciplinary charges, and Petitioner's unsubstantiated assertion that the challenged disciplinary report was false cannot independently support a viable habeas petition. Finally, petitioner argues

that to the extent that Petitioner is challenging any sanction except the loss a good conduct time, such a challenge is not cognizable in a habeas petition

In his response, Petitioner argues for the first time that he was never given a lock up order to place him in the Special Housing Unit ("SHU"), and therefore, was never put on notice of his detention. Accordingly, Petitioner argues that Respondent failed to supply an important document for the violation charged in the incident report.

## IV.　　DISCUSSION

### A.　　Legal Standards

#### 1.　　Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual

5

allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)).

In doing so, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

**B.    Analysis of the Petition**

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

3) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designed by staff, if the prisoner is illiterate or the

7

        complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case;

    4) providing a written statement by the decision maker decision maker describing the evidence relied upon and the reasons for the disciplinary action; and

    5) providing impartial fact finders.

Id. at 564-571.

A prison disciplinary determination comports with due process if "some evidence" supports the decision. See Superintendent v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses or even weighing the evidence. See id. at 455; Baker, 904 F.2d at 932; Thompson v. Owens, 889 F.2d 500, 501-02 (3rd Cir. 1989). Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." Hill, 472 U.S. at 457.

In the present case, the undersigned finds that Petitioner was provided all the due process required for a disciplinary proceeding. First, Petitioner received written notice of the charge against him more than 24 hours before the disciplinary hearing. Petitioner's hearing was held on December 6, 2016, and he was provided with a written incident report on October 22, 2016. Therefore, Petitioner received a copy of the incident report more than 24 hours before the disciplinary hearing. Second, Petitioner was afforded the opportunity to call witnesses on his own behalf during his disciplinary hearing, but declined the same. Third, although he declined to invoke it, Petitioner was instructed on his right to staff representation during his disciplinary hearing. Further, the Petitioner was provided a written DHO report which outlined the evidence relied upon by the DHO at the disciplinary hearing and described the DHO findings, the sanctions imposed, and the reasons for the sanctions.

Finally, Petitioner was provided with an impartial factfinder during his disciplinary hearing. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.

The undersigned acknowledges that Petitioner challenges the DHO's determination that he constructively possessed the weapon found in his cell and claims that constructive possession cannot apply because the cell was accessible to other inmates. Petitioner generally claims that another inmate must have placed the weapon in his cell. However, the DHO was not persuaded by Petitioner's assertion in that regard, and the fact that his cell might have been accessible to other inmates does not transfer his cell into a common area where the constructive possession rule is inapplicable. McClung v. Hollingsworth, 2007 WL 1225946 at *3 (4th Cir. 2007).[1] Therefore, because a dangerous weapon was discovered in a cell that was the "exclusive domain" of Petitioner and his cellmate, the constructive possession rule provides the necessary "some evidence" to sustain Petitioner's disciplinary action.

The undersigned further recognizes that Petitioner argues that his due process rights were violated because the DHO found him guilty of prohibited act 104, while the incident report charged him with a violation of prohibited act 108. Citing 28 C.F.R. § 541.8, Petitioner argues that the DHO cannot alter an incident report without a rewrite. In advancing this argument, Petitioner misapprehends that provision of the Code of Federal Regulations which provides as follows:

> The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC. The DHO's hearing involves the following:
>
> (a) Available dispositions. The DHO will make one of the following decisions

---

[1] In its ruling, the Court declined "to hold that an inmate's unlocked cell, simply by virtue of being unlocked, becomes transformed into a common area akin to a kitchen or television lounge in which the constructive possession rule has no application. The Due Process Clause does not require a continuous lock–down before allowing punishment for possession of contraband found in inmates' cells."

after a hearing on the incident report:

> **(1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**
>
> (2) You did not commit the prohibited act(s) charged; or
>
> (3) The incident report will be referred back for further investigation, review, and disposition.

28 C.F.R. § 541.8(a) (emphasis added). The flexibility provided by this regulation recognizes that the description of the alleged wrongdoing contained in the incident report, and not the precise code number violation, actually serves to notify an accused inmate of potential charges. Boyd v. O'Brien, No. 7:08-cv-00289, 2008 WL 2074073, at 7 (W.D. Va. May 14, 2008), aff'd 301 F. App'x 292 (4th Cir. 2008); see also Shakoor v. O'Brien, No. 7:06-cv-00672, 2006 WL 3474331 (W.D. Va. Nov. 30, 2006).

The list of prohibited acts is divided into four separate categories based on severity: Greatest; High; Moderate; and Low. 28 C.F.R. § 541.3. The greatest severity level of prohibited acts begins with the numeral "1". In the instant case, the incident report provided that a random search of Petitioner's cell recovered a homemade weapon in direct violation of code 108 which prohibits the "[p]ossession, manufacture, introduction, or loss of a hazardous tool…." The DHO found Petitioner guilty of violating code 104 which prohibits "[p]ossession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition or any instrument used as a weapon.

Although not precisely stated, Petitioner seemingly argues that he received inadequate written notice of the actual charge against him after the DHO found him guilty of code 104 as opposed to code 108 as charged in the incident report thus violating due process. Admittedly, due process requires that an inmate must receive written notice of a charge against him no less than 24 hours before his disciplinary hearing "in order to inform

him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. The function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Id.

Petitioner does not dispute that he received the incident report detailing the conduct in question well in advance of the 24 hour minimum requirement. However, construing Petitioner's allegations liberally, he alleges that he did not receive adequate notice of the charge because the incident report indicated a violation of code 108, and the DHO informed him at the hearing that found that he had committed the prohibited act of 104. However, the incident report plainly notifies Petitioner that the charges against him arose from the discovery of a homemade weapon taped to the underneath of the locker assigned to him in his cell.  That "act" was the basis of the disciplinary charge and provided him adequate notice of the charge against which he needed to defend himself.

Finally, the undersigned notes that in his response to Respondent's Motion to Dismiss or for summary Judgment, he alleges the "lockup order to place him in the Special Housing Unit was never given to him to put him on notice of his detention." ECF No. 14 at 2. The undersigned has reviewed BOP Policy Statement 5270.09, Inmate Discipline Program, and can find no reference to a lockup order. Furthermore, except for this perfunctory statement, Petitioner provides no explanation as to how failure to provide him with a lockup order, if one even existed, violated the due process requirements of Wolff.

## V.   RECOMMENDATION

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment [ECF No. 10] be **GRANTED** and this § 2241 petition be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp. Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further **DIRECTED** to provide a copy to all counsel of record via electronic means. Finally, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the magistrate judge association with this case.

**DATED:**  April 16, 2017

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE